H. B. FULLER, Respondent, v. WALTER REED et al., Appellants.

(215 N. W. 147.)

**Associations — unincorporated nonprofit associations — officer not individually liable on contract.**

The inference that an officer of a voluntary nonprofit association, who enters into a contract on behalf of the association binds himself individually is ordinarily one of fact; and it does not follow as a matter of law, in any case or in every case, that the officer of a voluntary, unincorporated, nonprofit association becomes liable as an individual upon a contract which he makes with a third person in behalf of the association. And where such officer contracts solely as a representative of the association, and expressly stipulates that he is not to be bound individually, and that the other contracting party shall

Annotation.— (1) On personal liability of member of voluntary association not organized for personal profit on contract with third person, see annotation in 7 A.L.R. 222; 41 A.L.R. 754; 25 R. C. L. 64; 3 R. C. L. Supp. 1401; 6 R. C. L. Supp. 1448.

receive payment only out of funds received by the association from member-ship dues, the officer is not individually liable upon the contract.

Opinion filed August 20, 1927.

Associations, 5 C. J. § 60 p. 1352 n. 97, 98.

Appeal from the District Court of Cass County, *Cole*, J.

The defendants, Walter Reed, A. J. McInnes, John Dawson, John Strauss and Franklin Paige, appeal from a judgment in favor of the plaintiff.

Reversed and Remanded.

*Lawrence, Murphy & Nilles,* for appellants.

In a case like this, the usual presumption of credit is inverted; and in the absence of evidence to the contrary, the vendor is supposed to have relied on the responsibility of the persons who gave the order. Learn v. Upstill (Neb.) 72 N. W. 214.

No person can be charged upon a contract alleged to have been made upon his responsibility unless it can be shown that the making of that contract was with his expressed or implied consent. Devoss v. Gray, 22 Ohio St. 169; Newall v. Borden, 128 Mass. 31; Volger v. Ray, 131 Mass. 439; Ray v. Powers, 134 Mass. 22; Burt v. Lathrop, 52 Mich. 106; Rice v. Peninsular Club, 52 Mich. 87.

A committee succeeding the defendants is not bound by the obligations incurred by their predecessor. Sisler v. Daniels, 66 Barb. 426.

Unless at the time the debt was incurred by an express contract based on a good consideration all of which must be alleged and proved. Hornsberger v. Orchard, 39 Neb. 639, 58 N. W. 425.

The books and records of unincorporated associations are subject to the same rules applied to corporate books and records with respect to admissibility. 22 C. J. 901.

The records and minutes of a private corporation are admissible to prove its acts, but they are not the only mode of proof. They are prima facie admissible, but may be rebutted by parol. Niblack, Ben. Soc. 2d ed. § 46; Supreme Lodge, K. H. v. Wickser, 72 Tex. 257, 12 S. W. 175; Rueb v. Rehder (N. M.) 1 A.L.R. 423, 174 Pac. 992.

The corporate books are not as a general rule conclusive either as against the corporation or against its stockholders or members or di-

rectors or other officers. City Electric Street R. Co. v. First Nat. Exch. Bank, 62 Ark. 33, 31 L.R.A. 535, 54 Am. St. Rep. 282.

The minutes of corporation meetings and other like corporate records are only prima facie evidence of the proceedings, and parol testimony is admissible for the purpose of proving what actually occurred. 12 C. J. 377; State v. Guertin, 106 Minn. 248, 130 Am. St. Rep. 610, 119 N. W. 43.

Minutes of corporation meetings are only the prima facie record of the proceedings. Thomp. Corp. § 7739; Van Hook v. Somerville Mfg. Co. 5 N. J. Eq. 633; Bay View Homestead Asso. v. Williams, 50 Cal. 353.

*Usher L. Burdick,* for respondent.

Liability in a voluntary unincorporated association is predicated upon two theories: 1. If the association is organized for profit, and the debt is one authorized for the purposes of the association, the members are liable as partners without proof of special approval by them. 5 C. J, p. 1363; 2. If the association was not organized for profit, the members are not partners and are not liable merely on account of membership. Liability in that case is predicated upon the theory of agency and applies to those, only, who have authorized or ratified the debt. 5 C. J. p. 1363.

The person making a contract in the name of such association is personally bound thereby and the members of the association consenting to the contract are bound in the same way. Reding v. Anderson, 34 N. W. 300.

CHRISTIANSON, J. Plaintiff brought this action against Walter Reed, A. J. McInnes, I. N. Rasmusson, Franklin Paige, Martin Jacobson, John Dawson, John Strauss and the North Dakota Farm Bureau Federation, to recover for services performed by the plaintiff during the years 1921-22–23 and 24, as secretary of the North Dakota Farm Bureau Federation.

The North Dakota Farm Bureau Federation is an unincorporated voluntary association of farm bureaus of some thirty-five to forty counties of the state. The membership in the county bureaus consists of farmers in the respective counties. Under the plan of organization each member of a county farm bureau pays an annual membership

fee of $10, and the county farm bureau pays to the North Dakota Farm Bureau Federation one half of each membership fee so received by it. The North Dakota Farm Bureau Federation was organized at a convention of representatives of the various county farm bureaus, held in January, 1921. At this convention a constitution and by-laws were adopted and a board of directors and an executive committee were chosen. The constitution provided that the executive committee should have power "to establish and maintain offices and to employ a secretary and such assistants and employees as it may deem necessary and fix the salaries in each case." The defendant, Franklin Paige, was one of the members of the executive committee chosen at the first meeting; but the other individual defendants held no official position in the North Dakota Farm Bureau Federation until in and after January, 1922. The plaintiff was present at the convention at which the North Dakota Farm Bureau Federation was formed; and was, at or about that time, elected executive secretary and afterwards served as such. In January, 1922, the defendants Franklin Paige, Walter Reed, A. J. McInnes, John Dawson and John Strauss were chosen members of the executive committee and constituted such committee during that year and the following year. The defendants I. N. Rasmusson and Martin Jacobson were not members of the executive committee nor of the board of directors during the year 1922.

The case was tried to a jury, but at the close of plaintiff's case defendant's counsel also rested his case and moved for a directed verdict in favor of the defendants for a dismissal of the action. Thereupon both parties consented that the jury be discharged and that the cause be submitted to the court. The trial court denied defendant's motion for a directed verdict and made findings and conclusions in favor of the plaintiff. Thereafter the defendants moved that the judgment be vacated and that they be permitted to introduce certain evidence. Defendants further moved in the alternative for judgment notwithstanding the verdict or for a new trial. The trial court denied the latter motion, but granted the motion to vacate the judgment and directed that either party be permitted to introduce additional evidence. Thereafter it was stipulated that the defendants Franklin Paige, John Strauss, A. J. McInnes and one Hector, if called as witnesses and duly sworn would testify as follows:

"That they attended the annual meeting of the delegates from the county bureaus attending the state convention of the North Dakota State Farm Bureau Federation held in January 1922 at which time there was also held the annual meeting of the Board of Directors and members of the executive committee. That at the request of the president of the association, such parties went to see the plaintiff, H. B. Fuller, as a committee to discuss with him his employment as secretary and the matter of payment of salary and the amount of salary which Mr. Fuller would expect. That in the presence of the other witnesses above named and in the course of that discussion, *Mr. Paige stated to Mr. Fuller that the members of the executive committee would not sign any notes or personally go good for any debts of the defendant association and that Fuller would have to look to the association for the payment of his salary.* That he would have to keep after the county bureaus in the collection of membership dues, and if he did this he ought to have no trouble in getting his money, *to which Mr. Fuller replied that he did not expect to look to any of the members of the executive committee nor the directors for the payment of his salary claims.* . . ."

The trial court made findings and conclusions in favor of the plaintiff and ordered judgment in his favor against all the individual defendants, except I. N. Rasmusson and Martin Jacobson. Judgment was awarded against the defendant Franklin Paige, individually, for the amount which the trial court found to be due to the plaintiff for salary for the year 1921; and judgment was rendered against the defendants Franklin Paige, Walter Reed, A. J. McInnes, John Dawson and John Strauss for the amount which the trial court found to be due the plaintiff for salary during the year 1922. All the defendants against whom judgment was rendered appeal.

Voluntary unincorporated associations naturally divide themselves into two classes: (1) Those organized for profit, i. e., with the end in view of earning profits for the members; and (2) those which do not contemplate any pecuniary profit to the members. Associations of the first class are generally formed for business purposes, while those of the second are generally formed for noncommercial purposes. An association of the first class is in legal effect a partnership so far as the liability of the members thereof to third persons is concerned; and "ac-

cordingly each member is individually liable as a partner for a debt contracted by the association. As each partner represents his copartners, so each member of the association represents his comembers, and each is bound by the acts of the others in the common behalf." 5 C. J. 1363; 1 Williston, Contr. § 307. But an association of the second class is not a partnership, and the members thereof "become liable for obligations incurred in behalf of the association within the scope of the authority of the agent attempting to create the liability." 1 Williston, Contr. § 308. "Membership, as such, imposes no personal liability for the debts of the association; but to charge a member therewith it must be shown that he has actually or constructively assented to or ratified the contract upon which the liability is predicated." 5 C. J. 1363; Vorachek v. Anderson, 54 N. D. 891, 211 N. W. 984. "The distinction between an association which is a partnership and one which is not, is mainly in that the relation of partners to one member implies an authority in itself, whereas the liability of members of an association which is not a partnership for the acts of its officers or other members, must be determined on general principles of agency." 1 Williston, Contr. § 308.

In the instant case it seems to be conceded that the North Dakota Farm Bureau Federation is a nonprofit association. And plaintiff does not predicate defendants' liability upon their membership in the North Dakota Farm Bureau Federation; he predicates liability upon the theory that the North Dakota Farm Bureau Federation was and is legally incapable of contracting, and that the defendants, having entered into a contract with the plaintiff as agents of a legally incompetent and irresponsible principal, are individually bound by the contract. In plaintiff's brief on this appeal it is said:

"The second attempt (on part of defendants) to escape (liability) arises from the statements of the counsel that the defendants were not members of the Federation. This is immaterial as the defendants are not sued *as members* but as *executive officers.* . . ."

"Plaintiff does not claim that the liability of these officers and executive directors arises out of the fact that they are members of the association and that the liability is a partnership liability but that these men as executive officers and agents of the association entered into a contract with the plaintiff on behalf of a principal that is legally non-

existent and legally incompetent, and because the principal is non-existent and legally incompetent they, themselves, became personally liable and responsible on the contract."

In support of this contention plaintiff cites Lewis v. Tilton, 64 Iowa, 220, 52 Am. Rep. 436, 19 N. W. 1911 (and other authorities to like effect), wherein it is broadly stated that one who holds himself out as agent for a principal that has no legal existence, and as such agent contracts with a third party, is individually liable upon the contract. This like many other general statements is correct only when applied to a particular state of facts. In a large number, and probably a majority, of cases the statement is true; but in the circumstances of certain cases it is incorrect. It is true that one who purports to act as agent for another represents or warrants to the party with whom he contracts that he is acting for an existing principal who is legally capable of contracting; and where his principal is an association which has no legal existence and no power to contract as such and this fact is unknown to the other contracting party, the agent is individually liable to such party. And so again situations frequently arise where the third party in contracting with representatives of a nonprofit, voluntary association, knowing that such association has no legal existence and no contracting power as an association, in fact extends credit to the representatives individually rather than to the association they represent, and this is especially true in cases where the representatives are themselves members of the association. It does not follow as a matter of law, however, in any case or in every case, that the representative of a voluntary nonprofit association becomes liable individually upon a contract which he negotiates with third parties in behalf of such association. Of course, where there is a provision in the contract to that effect he is individually bound; or where there is no such provision but the circumstances are such that an inference must be drawn that credit was extended to the agent, he is so bound. Where, however, there is an express understanding between the parties that the agent acts not for himself but for the association; or where the circumstances are such that this is the only inference that can reasonably be drawn, then the agent is not liable. Where there is no express provision as regards the individual liability of the agent and the circumstances are such that reasonable men may

differ as to whether the credit was extended to the association or to the agent, the question of the agent's individual liability is one of fact.

In his work on Contracts, Williston says: "On general principles of contract the fact that the principal is not bound would not afford ground for holding the agent bound by the terms of the proposed contract if it were clear that no bargain with him was intended; but it must be supposed generally that the parties intended to make a binding contract, and if they knew that none was possible with the principal because, for instance, it was a corporation not yet formed or because of . its nonexistence or lack of capacity, it is often a fair inference that a contract with the agent was contemplated. This inference of fact is the basis of a presumption sometimes too strongly stated, that the agent is bound in such a case. If, however, circumstances make it clear that the parties, understanding the facts, had no intention that the agent should be liable, he will not be." 1 Williston, Contr. § 282.

In Story on Agency, it is said:

"Persons contracting as agents, are nevertheless ordinarily, although, as we shall presently see, not universally, held personally responsible, where there is no other principal, to whom resort can be had. . . . This whole doctrine proceeds upon the plain principle that he who is capable of contracting, and does contract in his own name, although he is the agent of another, who is incapable of contracting, intends to bind himself; since in no other way can the contract possess any validity, but it would perish from its intrinsic infirmity. . . But although it is thus true that persons, contracting as agents, are ordinarily held personally responsible, where there is no other responsible principal to whom resort can be had; yet, the doctrine is not without some qualifications and exceptions, as, indeed, the words 'ordinarily held,' would lead one naturally to infer. For, independent of the cases already suggested, where the contract is, or may be treated as a nullity, on account of its inherent infirmity or defective mode of execution, other cases may exist, in which it is well known to both of the contracting parties, that there exists no authority in the agent to bind other persons for whom he is acting, or that there is no other responsible principal; and yet, the other contracting party may be content to deal with the agent, not upon his personal credit, or personal responsibility, but in the perfect faith and confidence, that such contracting party will

be repaid and indemnified by the persons who feel the same interests in the subject-matter of the contract, even though there may be no legal obligation in the case. Thus, for example, if private persons should subscribe a sum towards some charitable object, and should request an agent to employ tradesmen, and others, to supply materials to carry it into effect; and it should be distinctly made known by the agent, that the tradesmen and others were not to look to him, or to the subscribers personally, for payment; but that they must solely depend upon the success of the charitable subscription, and the state of the funds; and the supplies should be furnished with this clear understanding; there could be no doubt that neither the subscriber (at least, beyond their subscriptions), nor the agent, would be personally responsible. . . . Similar transactions may take place in relation to agents, acting for the public at large, or for particular public bodies, in cases avowedly beyond the scope of their authority, and yet, for the benefit of the public at large, or for particular public bodies, where the other contracting party may rely solely upon the public liberality and sense of justice to award him a suitable compensation, without in any manner giving credit to the agents, or looking to them for compensation. The truth, however, is, that the same general principle prevails in all these cases, notwithstanding their apparent diversity of form and decision. They are all answered by the same general inquiry: To whom is the credit knowingly given, according to the understanding of both parties?" Story, Agency, 8th ed. §§ 280, 281, 288.

In discussing the liability of a person who assumes to act and contract for a voluntary, unincorporated association, Professor Mechem says: "It is, of course, possible in such a case that the assumed agent may have expressly excluded personal responsibility, or that the person extending the credit may have done so in reliance upon voluntary payments, subscriptions or funds to be raised, but where it does not appear that he has done so, the person who assumes to act will usually be personally responsible. In such cases usually the fact that there is no legally responsible principal will be equally within the knowledge of both parties, and in that event, as in the similar case referred to in a preceding section, there will be no occasion for resorting to an implied warranty of authority. The question here is, rather, to whom was the credit extended. The rule is such cases, it is said, 'is

founded upon a presumption of fact, and is not the expression of any positive or rigid legal principle. The presumption referred to is that the parties to a contract contemplate the creation of a legal obligation capable of enforcement, and that, therefore, it is understood that the obligation shall rest on the individuals who actively participate in the making of the contract, because of the difficulty in all cases, the impossibility in many, of fixing it upon the persons taking part in or submitting to the action of the evanescent assemblage. If, however, the person with whom the contract is made, expressly agrees to look to another source for the performance of its obligations, or if the circumstances be such as to disclose an intention not to charge the agent, as where the other agrees to accept the proceeds of a particular fund, there is no longer reason to indulge the presumption, and it may be rebutted by proof of such facts.' There may of course be cases, even in this field, where the lack of legal responsibility may not be apparent, and in which express or implied representations of matters of fact will make the assumed agent liable." 1 Mechem, Agency, 2d ed. § 1389. See also 5 C. J. p. 1352; Wrightington, Unincorporated Asso. p. 280.

In the instant case no findings were made as to whether there was an express understanding between the plaintiff and the defendants that the defendants were not to be personally liable for any debts of the association and that the plaintiff "would have to look to the association for the payment of his salary." The case was apparently decided on the theory that the issue thus presented was immaterial and that defendants, as matter of law, were individually liable for plaintiff's salary even though the alleged understanding existed. The defendants contend that this view was erroneous; that the issue presented was a material one; that if such understanding existed the defendants are not individually liable for plaintiff's salary. In our opinion these contentions of the defendants are well founded.

It is undisputed that the plaintiff had full knowledge of the character of the organization of the North Dakota Farm Bureau Federation and of the defendants' relation thereto. The plaintiff knew just as well as the defendants that this association had no legal status and was incapable of contracting as an organization. If it is true, as the defendants claim, that in January, 1922 there was an express understanding between the plaintiff and the individual defendants that they were not

to be personally liable to the plaintiff for any part of his salary and that such salary should be paid only out of funds acquired by the North Dakota Farm Bureau Federation, then there is, we think, no liability on the part of the defendants against any of the individual defendants for any claim for salary of plaintiff subsequent to that time. And if there was no such express understanding, then there is, in our opinion, the further question to be determined, as one of fact and not of law, whether in the circumstances of this case, plaintiff, in accepting employment and rendering service, extended credit to the individuals who constituted the executive committee or whether he extended credit to the North Dakota Farm Bureau Federation with the implied understanding between him and the representatives of the North Dakota Farm Bureau Federation, that his salary should be paid only out of the funds of that association and not otherwise. This latter question of fact also exists for determination as regards the claim against the defendant, Franklin Paige, for the amount plaintiff claims to be due him for salary during the year 1921. It follows therefore that the judgment appealed from must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BIRDZELL, Ch. J., and NUESSLE and BURR, JJ., concur.

BURKE, J., not participating.